

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 2-09-027-CR**

LOGAN MYLES ROBINSON                                                       APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

Through two points of error, appellant Logan Myles Robinson appeals his conviction and thirteen-year sentence for sexual assault. *See* Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2009). We affirm.

**Background Facts**

In 2005, a Tarrant County grand jury indicted Robinson for sexually assaulting Angela, his ex-wife.[1] The parties filed various pretrial documents,

------------

[1] Robinson was married to Angela at the time of the assault, but they are now divorced.

and then under a plea bargain with the State, Robinson pled guilty, waived certain constitutional and statutory rights, and entered a judicial confession. The trial court deferred its adjudication of Robinson's guilt, placed him on ten years of community supervision, and delineated several conditions of the community supervision.

In 2007, the State petitioned the trial court to proceed to its adjudication of Robinson's guilt. The State amended its petition in 2008; the amended petition alleged that Robinson had violated his community supervision conditions by committing a new offense, not maintaining suitable employment, not notifying law enforcement that he changed addresses, failing to pay certain costs and fees associated with his case, and not attending sex offender treatment. In the hearing on the State's amended petition, Robinson pled true to failing to pay costs and fees and pled not true to the other allegations. The State called witnesses to testify about the allegations in the petition that Robinson had not pled true to. The trial court found all of the allegations true, convicted Robinson of sexual assault, and after hearing evidence related to his

2

punishment,[2] assessed thirteen years' confinement. Robinson filed his notice of this appeal.

### Robinson's Points of Error

In Robinson's two points, which he briefs together (and which we will therefore resolve together), he argues that the trial court erred by limiting his cross-examination of Angela during the adjudication hearing, by refusing to grant a continuance to secure Angela's testimony during the punishment hearing after he attempted but failed to subpoena her, and by adjudicating him guilty. Robinson contends that the trial court should have allowed his questioning of Angela regarding details of the underlying sexual assault because he was trying to establish his innocence in accordance with an application for a writ of habeas corpus that he had filed.[3]

---

[2] During the punishment hearing, the State presented a presentence investigation report, and Robinson called his sister and his mother, among other witnesses.

[3] None of Robinson's points of error, his notice of appeal, nor his two motions for new trial expressly challenge the trial court's decision to deny his writ application.

**The limitation of cross-examination during the adjudication hearing**

Robinson first contends that the trial court erred by limiting his cross-examination of Angela during the adjudication hearing on the State's amended petition.  He specifically argues that the court denied his due process rights of cross-examination and confrontation.

The State called Angela to testify about the first paragraph of its amended petition to adjudicate.  When Robinson attempted to cross-examine Angela about details of the sexual assault rather than issues related to the State's amended petition, the State objected on relevance grounds and the trial court indicated that it was not going to allow any questioning regarding the underlying offense during the adjudication hearing.  The trial court told Robinson's counsel, however, that he could go into the merits of the writ application and call Angela as a witness during the punishment portion of Robinson's trial.  Robinson's counsel indicated his acceptance of that solution and told the court that he had no more questions for Angela at that time.

The Sixth Amendment gives a defendant the right to be confronted with the witnesses against him.  U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004).  And that right includes the qualified right to cross-examine those witnesses.  *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S. Ct. 1105, 1110 (1974); *Hammer v. State*, 296

4

S.W.3d 555, 561 (Tex. Crim. App. 2009); *Walker v. State*, 300 S.W.3d 836, 844–46 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000)).

However, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 338, 341 (Tex. Crim. App. 2004).

Preservation of error is a systemic requirement that this court should review on its own motion. *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007). Preservation requirements apply to confrontation clause complaints. *See Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (overruling the appellant's constitutional confrontation clause points because he did not preserve error related to the confrontation clause at trial); *Campos*

5

*v. State*, 186 S.W.3d 93, 98 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (explaining that the "right of confrontation is vital to an ordered criminal justice system, but it is nonetheless a trial right, and a defendant waives his right to confront witnesses if he does not object at trial"); *Courson v. State*, 160 S.W.3d 125, 129 (Tex. App.—Fort Worth 2005, no pet.).

Robinson did not assert any constitutional violation—related to the confrontation clause, the related right of cross-examination, or otherwise—when the trial court told him that he would not be permitted to ask Angela questions about the sexual assault during the adjudication hearing.[4] The dissenting opinion correctly indicates that the code of criminal procedure does not require a separate punishment hearing during an adjudication proceeding and that, functionally, an adjudication proceeding is unitary. *See Euler v. State*, 218 S.W.3d 88, 92 (Tex. Crim. App. 2007); *Griffith v. State*, 166 S.W.3d 261, 265 (Tex. Crim. App. 2005); Dissenting Op. at 1–3. But that legal principle is irrelevant to this case because Robinson did not object to the trial court's continuing or segregating his adjudication proceeding and has not raised such as error on appeal. Rather, Robinson consented to the trial court's continuance

---

[4] Robinson mentioned the rights of confrontation and cross-examination in his second motion for new trial, but he related those rights to the use of hearsay statements in the presentence investigation report and not to any issues occurring in the adjudication hearing.

of the punishment hearing from October 2008 to January 2009 because he requested a presentence investigation report to be prepared before the trial court ordered the terms of its sentence.[5] And Robinson obviously recognized the need to ensure his witnesses' presence at the hearing in January 2009 because he sought subpoenas for two witnesses, including Angela.[6]

The dissenting opinion has not disputed that Robinson was required to preserve confrontation clause complaints and that he did not do so. Based on the authority cited above, we hold that Robinson forfeited his assertion that his

---

[5] Regardless of whether Robinson's petition to adjudicate hearing *should* have occurred in two phases, it is indisputable that it *did* occur in two phases—occurring months apart—because of Robinson's request that the probation department prepare a presentence investigation report. The dissenting opinion's statement that "no one returned to court for a punishment portion . . . of the trial" is not supportable under the record in this case. Dissenting Op. at 3.

[6] The dissenting opinion's statement and conclusion that the trial court denied Robinson due process because it *prevented* his opportunity to offer appropriate evidence simply is not borne out by this record. *See* Dissenting Op. at 4–8. The trial court *expressly agreed* to let Robinson call Angela to testify about the nature of Robinson's offense during the upcoming punishment portion of the trial rather than in the initial revocation portion, and Robinson's counsel *did not object* to that solution (by citing the 6th Amendment or the Constitution generally, using the word "confrontation," or in *any other way*); instead he indicated his acceptance of the solution. Then, although Robinson had nearly three months to serve a subpoena and guarantee Angela's presence at the punishment portion, he did not serve her with the subpoena so she did not appear.

7

rights were violated during the adjudication hearing, and we overrule that part of his two points.

**The absence of Angela's testimony during the punishment hearing**

The punishment hearing in Robinson's trial was held in January 2009, almost three months after the trial court found him guilty in October 2008. On January 23, 2009, Robinson filed an application to subpoena Angela to appear at the punishment hearing, but the application did not include her location or any of her contact information. At the beginning of the punishment hearing, Robinson's counsel told the court that Angela had not been served with the subpoena but that his investigator had talked to Angela. Robinson's counsel orally requested a continuance to find Angela so that she could provide testimony that would support his writ application and mitigate his punishment by showing the "severity of the effect upon the victim." Robinson contends on appeal that the trial court erred by denying the continuance.[7]

---

[7] The State did not subpoena Angela for her testimony at the adjudication hearing or the punishment hearing. *See* Tex. Code Crim. Proc. Ann. art. 24.03(a) (Vernon 2009) (stating that when "a witness has been served with a subpoena, attached or placed under bail at the instance of either party in a particular case, such execution of process shall inure to the benefit of the opposite party in such case in the event such opposite party desires to use such witness on the trial of the case"). Nothing in the record indicates that the trial court interfered with Robinson's attempt to subpoena Angela or that the trial court would have disallowed Robinson to question Angela about the underlying sexual assault at the punishment hearing if Robinson had obtained

The code of criminal procedure provides, "A criminal action may be continued on the *written motion* of the State or of the defendant, upon sufficient cause shown." Tex. Code Crim. Proc. Ann. art. 29.03 (Vernon 2006) (emphasis added). Accordingly, the denial of an oral motion for continuance preserves nothing for our review. *Anderson v. State*, 301 S.W.3d 276, 278–81 (Tex. Crim. App. 2009) (holding that a court of appeals erred by applying a due process exception to the motion for continuance preservation requirement and concluding that the "right to present a defense is subject to forfeiture"); *Williams v. State*, 172 S.W.3d 730, 733 n.1 (Tex. App.—Fort Worth 2005, pet. ref'd); *Ricketts v. State*, 89 S.W.3d 312, 317 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000)).

As the dissent argues, article 29.13 of the code of criminal procedure provides,

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

---

her presence at the hearing.

Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006); *see* Dissenting Op. at

8.  But this provision does not address or remove the requirement that a motion

for continuance must be in writing.  The court of criminal appeals and our court

have both applied the in-writing requirement to motions for continuance filed

during a trial.  *See Dewberry*, 4 S.W.3d at 755–56; *Matamoros v. State*, 901

S.W.2d 470, 478 (Tex. Crim. App. 1995); *Woodall v. State*, 77 S.W.3d 388,

401 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also* Tex. Code Crim. Proc.

Ann. art. 29.08 (Vernon 2006) (stating that "*[a]ll* motions for continuance must

be sworn to") (emphasis added); *Dixon v. State*, 64 S.W.3d 469, 473 (Tex.

App.—Amarillo 2001, pet. ref'd) (stating that an "oral motion for continuance

during trial does not preserve error for appellate review, even in the face of an

assertion that the Court's equitable powers allow consideration of the issue").[8]

---

[8] The dissenting opinion extensively quotes a footnote from the Texarkana Court of Appeals's *Rodriguez v. State* opinion because the dissenting opinion says that the *Rodriguez* opinion addressed the continuance issue "in a manner which . . . comports with constitutional mandates."  903 S.W.2d 405, 412 (Tex. App.—Texarkana 1995, pet. ref'd) (op. on reh'g); *see* Dissenting Op. at 10.  But after the footnote in *Rodriguez* that the dissenting opinion has quoted, the Texarkana court actually held that Rodriguez's motion for continuance was nonetheless waived because it was not sworn to.  *Rodriguez*, 903 S.W.2d at 412 ("Until such time as the Court of Criminal Appeals or the Texas Legislature changes the [sworn and in-writing] requirement, this procedure must be met.").

Therefore, we hold that Robinson's oral motion for continuance preserved nothing for our review, and we overrule that portion of his two points.[9]

**The trial court's decision to adjudicate Robinson guilty**

Finally, in the title of one of Robinson's points of error, he argues that the trial court "abused its discretion in adjudicating [him] guilty." However, he does not specify why the trial court abused its discretion beyond his assertions about his constitutional rights and his oral continuance request, which we have already resolved. Furthermore, Robinson has not directly challenged the sufficiency of the evidence to prove the allegations contained in the State's amended petition. Although he cites law in a portion of his brief related to a trial court's ability to revoke community supervision for failure to pay fees when the defendant is unable to pay, he did not present inability to pay as a defense at trial. Because Robinson's general contention that the trial court abused its discretion by adjudicating him guilty is inadequately briefed, we overrule that

---

[9] Robinson has not cited any authority holding that he was entitled to rely on Angela's presence at the punishment hearing—even though she did not receive a subpoena for that hearing—merely because she testified at the adjudication hearing. Also, Robinson's attempt and failure to serve a timely subpoena shows that he did not believe that Angela would appear at the punishment hearing merely because she had appeared at the adjudication hearing. While the trial court indicated during the adjudication hearing that Robinson could call Angela during the obviously distinct punishment hearing, it did not guarantee her presence at that hearing.

portion of his two points.  *See* Tex. R. App. P. 38.1(i); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *Harkins v. State*, 268 S.W.3d 740, 742 n.2 (Tex. App.—Fort Worth 2008, pet. ref'd).

## Conclusion

Having overruled both of Robinson's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  April 1, 2010



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-027-CR**

LOGAN MYLES ROBINSON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

I write separately because I cannot agree with the majority that Appellant somehow forfeited his right to offer evidence of actual innocence or mitigation evidence.

A revocation is a unitary proceeding. As our sister court in Dallas has explained,

> When a person enters a plea of guilty, the proceeding becomes a unitary proceeding. This applies regardless of whether the plea is entered before a judge or a jury. As the court of criminal appeals

has noted, once an appellant enters a guilty plea, the court should conduct the trial as a unitary proceeding rather than allowing the defendant to "piecemeal" his plea of guilty and true.[1]

When a defendant pleads guilty to a criminal offense and is placed on community supervision after the judge defers adjudication, the trial becomes a unitary proceeding.[2] The Texas Court of Criminal Appeals has explained,

> The bifurcated-trial procedure that the district court used is not authorized in a trial without a jury. Prior to the 1965 Code of Criminal Procedure all trials before the court or jury regardless of plea were unitary trials; that is, the issues of guilt and punishment were submitted at the same time. A bifurcated trial procedure was authorized in the 1965 revision of the Code of Criminal Procedure. The bifurcation statute provides, "In all criminal cases, other than misdemeanor cases of which the justice court or municipal court has jurisdiction, which are tried before a jury on a plea of not guilty, the judge shall, before argument begins, first submit to the jury the issue of guilt or innocence of the defendant of the offense or offenses charged, without authorizing the jury to pass upon the punishment to be imposed." The bifurcation statute is applicable only to pleas of not guilty before a jury. The statute has no application to a trial before the court on a plea of not guilty. This is not the first case in which courts have failed to notice that the bifurcation statute applies only to pleas of not guilty before a jury.
>
>> [S]ome confusion has existed among the bench and bar since the advent of Article 37.07. Records reaching this court frequently show courts bifurcating bench trials where the plea is guilty. Often the court will hear evidence, declare the defendant guilty, order a

---

[1] *Washington v. State*, 893 S.W.2d 107, 108–09 (Tex. App.—Dallas 1995, no pet.) (citations omitted).

[2] *Id.*; *see also Ricondo v. State*, 634 S.W.2d 837, 842 (Tex. Crim. App. 1981).

> pre-sentence investigation and sometimes months later re-convene the "penalty stage" of the guilty plea, allowing the State and defense to offer evidence as to punishment or guilt.[3]

Contrary to the thoughtful majority's repeated designation of separate phases or portions of the trial, there was only a single, unitary proceeding. Consequently, no one returned to court for a punishment portion or phase or segment or part of the trial. If, as the majority insists, the participants did return for a punishment portion or segment or part, then the trial court committed error by bifurcating a unitary proceeding.

The effect of the trial's becoming a **unitary proceeding** is that the issues of guilt and punishment cannot be separated.[4] The trial court therefore erred by denying Appellant his constitutional Sixth Amendment right to cross-examine the State's witness and by requiring Appellant to wait for the "punishment phase" in a unitary proceeding that had no punishment phase. I can find no law that requires a party to a lawsuit, and certainly a criminal lawsuit, to issue a subpoena to a witness who is present in the courtroom, under oath, and subjected to direct examination by the opposing party in order to cross-examine

---

[3] *Barfield v. State*, 63 S.W.3d 446, 449–50 (Tex. Crim. App. 2001) (citations and selected quotations omitted).

[4] *See Washington*, 893 S.W.2d at 108–09.

3

that witness.  The Texas Court of Criminal Appeals has explained repeatedly that

> [f]airness would dictate that a defendant be accorded an opportunity to offer appropriate evidence in mitigation of punishment after the revocation of probation and the adjudication of guilt and before the assessment of punishment if such evidence has not already been elicited during the proceedings, particularly if the defendant requests the opportunity.[5]

Here, the trial court was well aware that Appellant wanted to fully cross-examine the witness in order to offer evidence of actual innocence or mitigation evidence that lessened his moral culpability.  He attempted to offer this evidence in cross-examination of the State's witness.  The trial court refused to allow him to develop this evidence on cross-examination and told Appellant that he would have to wait until the "punishment phase."  The witness was never released.  Indeed, when the trial court asked if the witness could be released before Appellant had the opportunity to complete cross-examination, the prosecutor responded, "I'd ask she stick around, Judge."[6]

As this court has previously explained,

> We review the trial court's decision to exclude evidence under an abuse of discretion standard.  An abuse of discretion

---

[5] *Duhart v. State*, 668 S.W.2d 384, 387 (Tex. Crim. App. 1984) (quotations omitted).

[6] II R.R. at 61.

4

occurs when the trial court acts without reference to any guiding principles or rules.

Where the excluded evidence is sought during cross-examination, the Confrontation Clause of the United States Constitution is implicated. Errors of this sort are subject to a harm analysis, and must be reversed unless the court finds, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment.[7]

But denial of the right to cross-examine witnesses may also be a due process violation when it prevents a defendant from offering evidence of actual innocence or punishment mitigation evidence and brings into question the fundamental fairness of a trial. As the Texas Court of Criminal Appeals has so eloquently explained,

> Due process does not lend itself to simple, concise definitions. In its most basic sense due process is the impediment that is constitutionally imposed on governmental conduct that offends our fundamental rights. Relative to the protection of one's liberty: "[t]he essential guarantee of the due process clauses is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures." In other words, due process is in itself essentially the same as fairness. Or, at the very least, due process is the vehicle used to arrive at fairness thereby protecting our fundamental rights. Accordingly, "a fair trial in a fair tribunal is a basic requirement of due process." If legislation alters the essential fairness of a trial then a due process violation is necessarily implicated. In *Estelle v.*

---

[7] *McDaniel v. State*, 3 S.W.3d 176, 179–80 (Tex. App.—Fort Worth 1999, pet. ref'd) (citations omitted).

*Williams*, it was specifically stated that "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment."[8]

Or, in other words,

> The touchstone of due process is fundamental fairness. Accordingly, no State may deprive any person of the conditional liberty created by probation unless the State employs procedures that are fundamentally fair.[9]

In its conscientious analysis, the majority concentrates on the propriety of the trial court's bifurcating the proceeding rather than on the trial court's refusal to allow Appellant to offer mitigating evidence or evidence of actual innocence when the State's witness was in court, on the stand, and available for cross-examination. The majority holds that this error is harmless because Appellant failed to use the magic words "confrontation and cross-examination." Appellant was in the middle of cross-examination. He tried to complete his cross-examination. The State objected, and the trial court sustained the objection on the basis that Appellant had to wait until the "punishment phase" to offer his punishment evidence. No one was confused about what Appellant was requesting or why.

---

[8] *Long v. State*, 742 S.W.2d 302, 320–21 (Tex. Crim. App. 1987) (citations omitted), *cert. denied*, 485 U.S. 993 (1988), *overruled on other grounds*, *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

[9] *Euler v. State*, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007) (citations omitted).

The error was less a Sixth Amendment issue than a due process issue. It cannot be said that Appellant did not clearly voice his complaint or that anyone—the trial court, the State, or this court—was and is not fully aware of Appellant's complaint. He tried to offer evidence in mitigation of punishment or evidence of actual innocence, and he was not allowed to do so. He was therefore denied fundamental due process. "The Due Process Clause of the Fourteenth Amendment prohibits criminal rules or procedures that offend traditional notions of fair play and substantial justice."[10]

The proper analysis of this error is under rule 44.2(a) because the error is of constitutional dimension.[11] It is of constitutional dimension, in part, because denial of the constitutional right to complete cross-examination of a witness in order to present evidence in mitigation of punishment or evidence of actual innocence is also a denial of due process. It is difficult to understand how denying Appellant the opportunity to present evidence of actual innocence,

---

[10] *Ladd v. State*, 3 S.W.3d 547, 575 (Tex. Crim. App. 1999) (citing *Medina v. California*, 505 U.S. 437, 445–46, 112 S. Ct. 2572, 2577 (1992)), *cert. denied*, 529 U.S. 1070 (2000); *see also Webb v. State*, 161 Tex. Crim. 442, 278 S.W.2d 158, 160 (1955) (stating that the term *due process* "includes and means that an accused shall, in a criminal case, be accorded that fundamental fairness necessary to the due administration of justice").

[11] *See* Tex. R. App. P. 44.2(a).

7

or even evidence in mitigation of moral culpability, could be harmless error under the facts of this case.

Nor can I agree that Appellant, who had no obligation to subpoena the witness in order to claim his right to cross-examine, can be faulted for failing to file a written, sworn motion for continuance. Although the written, sworn motion is required for a pre-trial continuance request, after trial begins,

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.[12]

Presumably, the legislature realized that a party who is surprised during trial does not show up in the courtroom with a prepared motion for continuance complete with affidavit on the off chance that something unexpected will occur. Surely the trial court's assuring Appellant that he would be allowed his constitutional right to complete his cross-examination of the State's witness in order to offer punishment mitigation evidence or evidence of actual innocence after the trial court improperly bifurcated a unitary proceeding would be an unexpected occurrence triggering article 29.13 protections. And surely a defendant in a criminal trial has the right to rely on the trial court's promise.

---

[12] Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006).

We have not yet reduced our criminal trials to triumphs of form over substance. The grounds for the request for continuance were clear and uncontroverted. Appellant made his request in open court and on the record. The request was taken down by the court reporter and appears in the reporter's record. If Appellant had been requesting a jury instruction, the writing requirement would have been satisfied by dictating it into the record. Yet the majority holds that because the request for continuance appears in the reporter's record instead of being handwritten on a yellow legal pad, it is no motion at all. And the majority also holds that when the court, the State, and the defendant all know the basis of a request for continuance—and that basis is clear and uncontroverted—and both sides argue the motion to the trial court, that nothing has been preserved for review.

The majority relies on *Anderson v. State*[13] for the proposition that the denial of an oral motion for continuance preserves nothing for review and notes that the Texas Court of Criminal Appeals holds that the court of appeals erred by applying a due process exception.[14] But the facts of this case distinguish it from *Anderson*. That case involves a pretrial motion for continuance, not a trial court's deliberate truncation of an appellant's cross-examination of a

---

[13] 301 S.W.3d 276 (Tex. Crim. App. 2009).

[14] *See* majority op. at 9.

9

witness and erroneous and false assurance that the cross-examination would continue in a later, fictitious "punishment phase."

Our sister court in Texarkana has addressed this issue in a manner which I believe comports with constitutional mandates:

> The purpose of requiring a sworn motion is to give credibility to the basis for the continuance. This would seem unnecessary when a matter is fully before the trial court. In this situation, the trial court would not need sworn pleadings to support the motion, but could consider testimony and support of the motion or the facts already before the court. A mandatory rule that all continuances must be in writing is a harsh requirement on parties in trial at the time the matter arising for which the continuance is sought. To have an opportunity to place the motion in writing and have it sworn to would sometimes require a delay of the trial until that matter could be completed, and the trial could often be expedited by allowing this motion to be oral and recorded by a court reporter.[15]

Although the *Rodriguez* court affirmed the action of the trial court, the statutory requirement of a sworn motion for continuance does not supercede the constitutional requirement of a fair trial. This fact has been recognized by our sister court in Dallas and by the Supreme Court of Texas.

---

[15] *Rodriguez v. State*, 903 S.W.2d 405, 412 n.5 (Tex. App.—Texarkana 1995, pet. ref'd).

10

In *Thrower v. Johnston*,[16] the trial counsel had a preferential setting in a different court in a different county. The trial court denied Thrower's unverified request to reset the case and defaulted Thrower when his counsel did not appear at the scheduled time but arrived in court as quickly as he could, given the conflict. In reversing the trial court, the Dallas Court of Appeals pointed out that

> the want of verification does no more than raise or reinforce the presumption that the trial court committed no abuse of discretion. Considering the information that was provided to the court below of the conflict in district and county court settings, we hold that appellants rebutted the presumption that the trial court did not abuse its discretion, a burden placed upon them by the foregoing rules.[17]

In reversing the trial court, the *Thrower* court relied on the Supreme Court of Texas's decision in *Villegas v. Carter*.[18] In *Villegas*, the trial court allowed counsel to withdraw two days before trial. Villegas was unable to engage counsel who could be prepared for trial in such short time, especially in light of the fact that the first attorney refused to turn over the file. The *Villegas* court balanced the valuable right to be represented by counsel in a civil case against the abuse of discretion standard and held that the trial court abused its

---

[16] 775 S.W.2d 718, 721 (Tex. App.—Dallas 1989, no pet.).

[17] *Id.*

[18] *Villegas v. Carter,* 711 S.W.2d 624 (Tex. 1986).

11

discretion when it allowed counsel to withdraw two days before trial and then denied Villegas's unsworn and apparently oral motion for continuance.[19] The court suggested that in determining whether the trial court abused its discretion in denying the unsworn motion for continuance, we consider the role that the trial court played in creating the basis for the request for continuance.[20] The *Villegas* court implies that it is fundamentally unfair to require a person to go to trial without a lawyer when the trial court both allowed counsel to withdraw at the eleventh hour and denied the non-compliant request for continuance.[21]

The law governing motions for change of venue is also instructive:

A defendant's proper motion to change venue entitles him to a change of venue as a matter of law unless the State files controverting affidavits. The reason for this rule is that "in the absence of controverting evidence, there is no issue of *fact* to be resolved." However, this right is waived by the defendant if he participates in a hearing on the merits of the motion and allows the State to put on evidence in such hearing, consequently rendering the issue one of fact for determination by the trial court.[22]

---

[19] *Id.* at 625–26.

[20] *See id.* at 625–27.

[21] *See id.*

[22] *Cooks v. State*, 844 S.W.2d 697, 730 (Tex. Crim. App. 1992) (citations omitted), *cert. denied*, 509 U.S. 927 (1993).

12

In the instant case, there is no issue in controversy. The issue was presented to the trial court when the witness took the stand and when the witness failed to appear. Both the State and Appellant participated in arguing the request to the trial judge. Requiring Appellant to request a recess while he reduced what was already taken down by the court reporter at both hearings to a handwritten, yellow-pad motion when the witness failed to appear, and requiring Appellant to write out an affidavit stating what everyone was aware of and what was completely uncontroverted, frankly, is not rational. When the interests of due process and technical compliance with a rule that should be satisfied by allowing either the State or the defendant to dictate a motion or request into the record in satisfaction of a writing requirement conflict, the due process interest must prevail.

Whether an oral, unsworn motion for continuance is different from a written, sworn motion for continuance, in that one is an equitable motion and the other is a statutory motion, is the subject of conflicting opinions. But courts are in agreement that an improper denial of a motion for continuance may constitute a denial of due process. In a Fifth Circuit case, the court explained, in the context of the impact of the denial of a continuance on the right to counsel,

13

Initially, the determination of when to allow a continuance is committed to the deliberate discretion of the trial judge. The trial judge must steer clear of the Scylla and Charybdis of extremes. At one extreme, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to counsel an empty formality." . . . While discretion is the rule of general application grounded in precedent, tradition and common sense, discretion can be abused. Viewing all the circumstances surrounding the trial court's decision, in the unusual case the denial of a continuance may be so arbitrary and so fundamentally unfair as to do violence to the Constitutional principle of due process.[23]

In the case now before this court, any delay was occasioned by the trial court's action in refusing to allow Appellant to complete cross-examination of the State's witness immediately after direct examination.

I recognize that the issue may become moot if Appellant receives habeas relief, but I cannot agree with the majority's holding, explicit or implicit, that the trial court properly bifurcated the adjudication proceeding and that Appellant was required to subpoena the witness before being allowed to cross-examine her despite the State's having conducted its direct examination of her and the trial court's never releasing her. I therefore respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

---

[23] *Gandy v. Alabama*, 569 F.2d 1318, 1322–23 (5th Cir. 1978).

14

PUBLISH

DELIVERED:  April 1, 2010