

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00058-CR

_____

DARRELL WAYNE HOOD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 24146

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

When his one-year-old son died after being hit in the chest, Darrell Wayne Hood, Jr., pled "guilty" to murder, pled "true" to a deadly weapon finding, pled "not true" to two sentence-enhancement allegations, and left punishment issues for the jury. The jury assessed a life sentence and a $10,000.00 fine.[1] We affirm the judgment of the trial court because (1) Hood's oral motion for continuance preserved nothing for our review, (2) the failure to permit individual voir dire of the jury panel was not error, and (3) legally sufficient evidence supports the jury's finding of "true" on the enhancement allegations.

*Background*

On August 9, 2010, Hood and Bridget Archie rushed their one-year-old child, Darrell Wayne Hood, III, to the Paris Regional Medical Center. The child was unresponsive and in full cardiac arrest. Hood told a nurse that he hit the child in the chest because the child was crying. The child died shortly thereafter, and Hood was arrested and charged with his murder.

Two newspaper articles appeared in The Paris News relating to the child's death. The first article was published in August 2010. Information regarding this article came to light during voir dire, but no details were given about the length of the article, what information it contained, or whether it mentioned criminal charges.

---

[1]Hood pled "not true" to two prior felony convictions alleged by the State for enhancement purposes. The jury found the enhancement paragraphs to be true.

The second newspaper article was published March 22, 2011, the day before jury selection in Hood's criminal trial. The article indicated Hood was scheduled to go to trial the following day on charges of murder in the death of his son. The article continues:

> Darrell Wayne Hood III, was pronounced dead at Paris Regional Hospital on August 9, 2010, after his father Darrell Wayne Hood Jr., and the child's mother drove the injured toddler to the hospital. The death was ruled a homicide because of blunt-force trauma. Autopsy reports said the child suffered "traumatic injuries" to the torso. The child's mother said the toddler had "become unresponsive" before the trip to the hospital. Hood was taken into custody at the hospital by Paris Police Department officers when it was learned he allegedly struck the child. Hood has been charged with murder with a deadly weapon and as an habitual offender. Jury selection is scheduled to begin Wednesday, with testimony to follow Thursday in the 6th District Court in the Lamar County Courthouse.

Before voir dire began March 23, 2011, Hood orally moved for a continuance to give him time to seek a change of venue based on the March 22 article. In the alternative, Hood requested the opportunity to individually voir dire each veniremember regarding the newspaper article. Both the motion for continuance and the motion for individual voir dire were denied. On appeal, Hood complains of both rulings and asserts that the evidence is legally insufficient to support the jury's finding that he committed two previous felonies.

*(1)*     *Hood's Oral Motion for Continuance Preserved Nothing for Review*

If there is a reasonable likelihood that prejudicial pretrial news will prevent a fair trial, the trial should be continued until the threat abates or until the case is transferred to another county not so permeated with publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966). A motion for

3

continuance based on adverse publicity is addressed to the discretion of the trial court. *Lopez v. State*, 628 S.W.2d 77, 81 (Tex. Crim. App. [Panel Op.] 1982).

"A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). All motions for continuance "must be sworn to by a person having personal knowledge of the facts relied on for the continuance." TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006). The record indicates that only an oral motion for continuance was made. The denial of an oral motion for continuance preserves nothing for our review. *Anderson v. State*, 301 S.W.3d 276, 276–78, 281 (Tex. Crim. App. 2009); *Robinson v. State*, 310 S.W.3d 574, 580 (Tex. App.—Fort Worth 2010, no pet.).

Even if a written, sworn motion for continuance had been presented, the trial court would not have erred in overruling the motion. This record does not describe a case of pervasive pretrial publicity. Hood complains of only one newspaper article,[2] which cannot be fairly characterized as prejudicial. As a general rule, media accounts that are accurate and objective are not prejudicial and inflammatory. *Gonzalez v. State*, 222 S.W.3d 446, 451 (Tex. Crim. App. 2007). The content of the subject article is succinct and appears factual and objective. Hood does not point to anything specifically inflammatory or prejudicial in the article and has not established that

---

[2]We do not consider the first article because Hood did not mention this article to the trial court or provide any evidence of what may have been included in the article. Further, Hood did not base his motion for continuance on this article and does rely on the existence of this article as a basis for his argument that the trial court erred in failing to grant his motion for continuance. TEX. R. APP. P. 38.1.

4

any of the venirepersons were unqualified as a result of reading it. To the contrary, the record indicates that all venirepersons who read the article specifically stated that they were not influenced by it.[3]

Moreover, as in *Lopez*, the motion for continuance was urged before jury selection, and no witnesses were heard in support of the contention that the jury was improperly influenced. The *Lopez* court determined that, because no evidence was offered in support of the motion and because it was not re-urged during voir dire, there was no abuse of discretion demonstrated. *Lopez*, 628 S.W.2d at 81. The same reasoning applies here.[4] We overrule Hood's arguments regarding his continuance motion.

*(2)     The Failure to Permit Individual Voir Dire Was Not Error*

Hood requested individual voir dire on the specific issue of whether the veniremembers read the newspaper article—published the day before jury selection in Hood's criminal case—relating to the death of Hood's son and whether they were thereby prejudiced. The trial court denied the request. Hood claims the failure to permit individual voir dire of the jury panel was an abuse of discretion, deprived him of a fair and impartial trial, and deprived him of due process under the United States and Texas Constitutions.

---

[3]Two veniremembers also indicated they read an article about the incident in the Paris newspaper during the summer of 2010.

[4]Hood further claims the denial of his motion for continuance deprived him of a fair and impartial trial and violated his due process rights under the United States and Texas Constitutions. For the reasons stated in the following section of this opinion, Hood's constitutional claims would not have prevailed, even if error had been preserved.

5

A trial court has the discretion to order individual voir dire in any case. *Rich v. State*, 160 S.W.3d 575 (Tex. Crim. App. 2005). In a noncapital, felony prosecution, individual or panel voir dire examination is a matter within the trial court's discretion, subject to review only to determine whether the trial court abused its discretion.[5] *Robles v. State*, 627 S.W.2d 466 (Tex. App.—Houston [1st Dist.] 1981, no pet.).

An abuse of discretion is shown when evidence of pretrial publicity or prejudice is of such a magnitude that denial of individual examination would amount to reversible error and denial of due process. *Johnson v. State*, 467 S.W.2d 247 (Tex. Crim. App. 1971). Only in an extreme case is it necessary to exclude the veniremembers from the courtroom during the selection of the jury. *Johnson*, 467 S.W.2d at 252. Denial of individual examination is an abuse of discretion when pretrial publicity and resultant prejudice is of an "extreme nature." *See Robles*, 627 S.W.2d at 467.

Because this was not a capital case, Hood did not have an absolute right to individually question veniremembers apart from the rest of the panel. Having reviewed the record of the voir dire, we find there was no abuse of discretion. Only ten panel members read either of the two newspaper articles relating to this case. Each of these prospective jurors stated that they were not influenced by the exposure. No inflammatory remarks or information regarding Hood was offered by any prospective juror. Moreover, Hood's counsel was not prevented from asking any

---

[5]Individual voir dire is mandated on demand of either party in capital felony cases in which the State seeks the death penalty. TEX. CODE CRIM. PROC. ANN. art. 35.17 (West 2006).

questions about pretrial publicity and never specifically requested that a particular venireperson be questioned at the bench, out of the hearing of the rest of the panel. No non-constitutional error is shown.

Hood further claims his Sixth and Fourteenth Amendment rights were violated. The Sixth Amendment provides that, in a criminal prosecution, an accused has the right to an impartial jury. U.S. CONST. AMEND. VI. The Due Process Clause of the Fourteenth Amendment guarantees that no person be deprived of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Hood claims he was denied an impartial jury and that he was denied due process of law based on the fact that the trial court did not permit individual voir dire on the issue of the article in the Paris newspaper. We disagree.[6]

Mere juror exposure to information about a defendant's prior convictions or news accounts of the crime does not, by itself, raise a presumption the defendant was deprived of due process and cannot receive a fair trial by an impartial jury. *Murphy v. Florida*, 421 U.S. 794, 799 (1975); *see also Mu'Min v. Virginia*, 500 U.S. 415, 416 (1991) ("While adverse pretrial publicity can create such a presumption of prejudice that the juror's claims that they can be impartial should not be believed, . . . this is not such a case."). Jurors do not have to be totally ignorant of the facts and issues of a particular case. *Ransom v. State*, 789 S.W.2d 572, 579 (Tex. Crim. App. 1989); *Russell v. State*, 146 S.W.3d 705, 710–11 (Tex. App.—Texarkana 2004, no pet.).

[6]The State alleges Hood waived his constitutional claims of error because he failed to distinguish between state and federal constitutional grounds on appeal and because he has asserted multifarious points of error. We decline to find waiver in this circumstance.

Here, the record indicates nothing more than exposure of certain veniremembers to a newspaper account of the crime; it does not support the claim that Hood was denied a fair and impartial trial or that his due process rights were violated. Accordingly, we overrule all points of error based on the inability to separately question veniremembers regarding pretrial publicity.

*(3)* *Legally Sufficient Evidence Supports the Jury's Finding of "True" on the Enhancement Allegations*

Hood next contends the State failed to properly prove (1) the two prior convictions used for enhancement purposes[7] and (2) that Hood was linked to the prior convictions. *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007) (to establish defendant's prior conviction, State must prove prior conviction and link defendant to it). No specific document or mode of proof is required to prove these two elements. *See id.* Instead, "the State may prove both of these elements in a number of ways." *Id.* For example, the State can meet its burden by introducing multiple documents that, when read together, contain "sufficient information to establish both the existence of the prior conviction and the defendant's identity as the person convicted." *Id.* at 921–22.

---

[7]The indictment against Hood alleged the felony offense of murder with a deadly weapon, habitual offender. The habitual offender allegations of the indictment stated:

> [P]rior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of Middle Grade Felony Theft, in the 26th Judicial District of the Parish of Bossier, Louisiana, in Cause Number 113197, on September 8, 2004, and, that prior to the commission of the offense or offenses for which the defendant was convicted as set out above, the defendant was finally convicted of the felony offense of Domestic Abuse Battery, in the First District Court of the Parish of Caddo, Louisiana, in Cause Number 275383, on November 18, 2009.

8

To prove the existence of Hood's November 18, 2009, conviction for domestic abuse, the State introduced a certified copy of the records of Darrell W. Hood from the Louisiana Department of Public Safety and Corrections as subscribed and sworn by the custodian of those records. These records include, among other things (1) a bill of information alleging Darrell W. Hood committed the offense of "R.S. 14:35.3 – domestic abuse battery" on Bridget Archie[8] by grabbing and choking her by the throat, and (2) criminal case minutes of the First District Court of Caddo Parish, Shreveport, Louisiana, indicating that, on March 31, 2009, Darrell W. Hood pled guilty to the charge of domestic abuse battery and was sentenced to three years in the Louisiana Department of Corrections. The records further indicate the sentence was suspended and Hood was placed on a one-year term of probation.[9] Finally, Exhibit 17 indicates that Hood's probation was revoked

---

[8]That the names of both the prior offender and his victim match the names, here, of the two parents of the child victim is remarkable.

[9]The minutes state that

> THE ACCUSED WAIVED ARRAIGNMENT AND PLED GUILTY TO THE CHARGE. THE COURT INFORMED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS AS PER BOYKIN VS. ALABAMA (SEE COURT REPORTER'S TRANSCRIPT). WHEREUPON, THE DEFENDANT WAS SENTENCED TO BE CONFINED AT HARD LABOR FOR A PERIOD OF THREE (3) YEARS AND COMMITTED TO THE LOUISIANA DEPARTMENT OF CORRECTIONS, SUBJECT TO THE CONDITIONS PROVIDED BY LAW. THE COURT ORDERED THE JAIL SENTENCE SUSPENDED AND THE DEFENDANT WAS PLACED ON SUPERVISED PROBATION FOR A PERIOD OF ONE (1) YEAR WITH SPECIAL CONDITIONS (SEE SPECIAL CONDITIONS OF PROBATION). THE COURT INFORMED THE DEFENDANT OF HIS RIGHT TO POST-CONVICTION RELIEF PROCEEDINGS (JUDGE MOSELEY).

9

November 18, 2009, at which time Hood was sentenced to a one-year prison term.[10]   The criminal

case minutes were attested by the deputy clerk for the First Judicial District Court of Caddo

Parish.[11]

The State introduced similar documents to prove Hood's conviction for middle grade

felony theft.[12]   These documents include, among other things (1) a document which appears to be

a bill of information indicating that Darrel W. Hood, Jr., stole merchandise from Wal-Mart on

April 8, 2002, and (2) criminal case minutes of the 26th Judicial District Court of Bossier Parish in

Benton, Louisiana, for cause number C 113197, indicating that, on January 10, 2003, Hood

entered a plea of guilty in cause number C 113197 and was thereafter sentenced, on July 14, 2003,

to two years in the Louisiana Department of Corrections.   The records further indicate the

---

[10]The case minutes indicate that, on November 18, 2009,

> THE ACCUSED, PRESENT WITH COUNSEL, WAYNE DISHMAN, THE DISTRICT
> ATTORNEY AND PROBATION OFFICER BEING PRESENT, CASE WAS TAKEN UP FOR
> PROBATION REVOCATION HEARING.   THE DEFENDANT ADMITTED THE
> ALLEGATIONS OF THE PETITION.   WHEREUPON, THE COURT ORDERED THE
> DEFENDANT'S PROBATION REVOKED AND THE ORIGINAL SENTENCE AMENDED TO
> ONE (1) YEAR HARD LABOR.   THE COURT ORDERED THE DEFENDANT BE GIVEN
> CREDIT FOR TIME SERVED AND ORDERED SAID SENTENCE RUN CONCURRENT
> WITH ANY OTHER SENTENCE.   (JUDGE MOSELY0 [sic]).

[11]A "fingerprint attachment sheet" was also a part of the record.   This document identifies the defendant as Darrell
Hood, Jr.   The date of birth is listed as May 19, 1983, race is listed as black, and sex is listed as male.   The fingerprint
attachment bears the signature of "Darrell W. Hood" and ostensibly contains Hood's fingerprints, as certified and
attested by the deputy clerk.

[12]All documents introduced to prove Hood's two prior convictions were made a part of State's Exhibit 17, and all were
records maintained by the Louisiana Department of Public Safety and Corrections, as verified by the custodian of
records for that entity.

sentence was suspended and Hood was placed on a two-year term of probation.[13] Finally, the criminal case minutes for cause number C 113197 indicate that Hood's probation was revoked September 8, 2004.

Because final, written judgments documenting Hood's two prior convictions were not introduced into evidence, Hood maintains the State failed to prove the existence of those convictions. Hood claims that, because a written judgment is essential to the finality of a conviction in Texas, proof of a prior conviction must be accomplished via introduction of a judgment and a sentence. Certainly, a written judgment is essential to the finality of a conviction in Texas. *Jones v. State*, 795 S.W.2d 199, 202 (Tex. Crim. App. 1990) (complete written judgment essential to finality of conviction since appeal may not be taken until one is entered). For purposes of appeal, a final written judgment is required. A final written judgment is not

_____

[13]The case minutes indicate that, on January 10, 2003,

> Defendant Hood in open Court with Ginger Johnson from Indigent Defender Board, withdrew his former plea of not guilty and entered a plea of guilty. The court explained the rights to a trial by jury, to confront accusers, to compulsory process, to appeal, to court appointed or private counsel, and the privilege against self-incrimination. The defendant indicated he understood and waived these rights. The DA summarized the facts and the court questioned defendant and his attorney and determined that the plea was free and voluntary and with full understanding of rights. The Court then accepted the plea of guilty. Defendant is remanded for sentence, pending a pre-sentence investigation. Bond conditions: (1) banned fro [sic] Walmart, (2) proof of efforts toward GED. (Stinson)

The case minutes for July 14, 2003, indicated that Hood appeared

> [I]n open Court with Ginger Johnson from Indigent Defender Board; whereupon the Court explained for the record the considerations taken into account and the factual basis therefore in imposing the following sentence, to-wit: Defendant is sentenced to serve 2 years at hard labor in Louisiana Department of Corrections, suspended and placed on active probation for 2 years, with special conditions . . . .

11

required, however, to prove a prior conviction. *Flowers*, 220 S.W.3d at 921–22.

In *Flowers*, the State offered a certified copy of Flowers' driver's license record and a computer printout from Dallas County showing Flowers' prior convictions. Flowers claimed the computer printout was not a "real" judgment and, therefore, could not be used to prove his prior DWI conviction. The issue was not, however, whether the computer printout was a judgment. Instead, the issue was whether a reasonable trier of fact could view the printout, together with Flowers' driver's license record, and find beyond a reasonable doubt that the alleged prior DWI conviction existed and that the conviction was linked to Flowers. *Id.* at 924. The computer printout, which contained detailed personal information about Flowers and his DWI conviction, together with Flowers' driver's license record, which linked him to the computer printout, was sufficient to prove the prior conviction. *Id.* The court could compare Flowers' driver's license picture to the defendant in court to link the defendant in court to the prior conviction. The totality of the State's evidence thus proved the enhancement paragraph true beyond a reasonable doubt.

The instant case is similar to *Flowers*. Here, criminal case minutes together with the Louisiana equivalent of indictments for each of the prior convictions were entered into evidence. The criminal case minutes from each of the Louisiana convicting courts list Hood's name and date of birth along with other physical descriptors. They describe the offenses with which Hood was charged, the cause numbers for each, Hood's court appearances, and the sentence received in each case. These documents are appropriately verified by the proper custodian of records, and are

12

certified as true and correct.  Importantly, these documents indicate Hood was convicted for each of the charged offenses.  The information here is sufficient for a reasonable trier of fact to find the existence of each of these convictions beyond a reasonable doubt.  *See id.*

Hood further claims that the State failed to prove that he is the defendant referenced in State's Exhibit 17.  The State had the burden to prove that Hood was the same person convicted of each of the prior felonies.  *See Flowers*, 220 S.W.3d at 921; *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986) ("It is incumbent on the State to go forward and show by independent evidence that the defendant is the person so previously convicted.").  Absent evidence linking the defendant to the prior conviction, evidence of the prior conviction is not relevant.  *Benton v. State*, 336 S.W.3d 355, 357 (Tex. App.—Texarkana 2011, pet. ref'd).  Whether sufficient links are present is determined on a case-by-case basis.  *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988).  The State is entitled to use circumstantial evidence to prove the defendant is the same person named in the alleged prior convictions.  *Id*. at 835–36, 839.

Exhibit 17 lists Hood's name as "Darrell W. Hood," and "Darrell W. Hood, Jr." on documents pertaining to the domestic abuse conviction, and as "Darrell W. Hood, Jr." on documents pertaining to the middle grade theft conviction.  At trial, Hood was identified as "Darrell Wayne Hood, Jr."  While the name alone is not the sole evidence connecting Hood to the prior convictions, it is unlikely that another by the name of Darrell Hood, Jr., was convicted in Louisiana during the time frames listed in those prior convictions.  As noted, the name Bridget

13

Archie belonged not only to the mother of the deceased child in the current case, but also to the victim in one of Hood's prior convictions, a fact further connecting Hood to that conviction.

Exhibit 17 also includes a "suspect rap sheet" for each of the prior convictions. Each rap sheet includes a 4" x 6" photograph of "Darrell W. Hood, Jr." The jury could use these photographs to compare to Hood at trial. *See Flowers*, 220 S.W.3d at 925 (driver's license record included picture of "Vincent Henry Flowers" which trial court could use to compare to person standing before him). Finally, Hood testified that he was convicted of the felony offense of domestic violence in Louisiana in 2009 and that his probation thereon had been revoked. With respect to the theft conviction, Hood testified that he pled guilty to theft in January 2003 and was sentenced to probation, but denied this was a felony conviction.

Considering the totality of the evidence linking Hood to the prior convictions, a rational jury could have found beyond a reasonable doubt that Hood was indeed the same person identified in the prior convictions admitted via State's Exhibit 17.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:    October 20, 2011
Date Decided:    October 28, 2011

Do Not Publish

14