

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00193-CR

———————————————

CLINTON RENTFRO, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 1
Denton County, Texas
Trial Court No. CR-2021-07024-B

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Clinton Rentfro appeals the trial court's judgment adjudicating him guilty for criminal trespass and assessing punishment at 120 days' confinement. In a single issue, Rentfro argues that the trial court abused its discretion by denying an evidentiary hearing on his motion for new trial. Specifically, Rentfro contends that the trial court denied his ability to offer testimony—including his own—when the trial court in a single hearing on the State's motion to adjudicate heard evidence on both adjudication and punishment before adjudicating and sentencing him. We hold that Rentfro's new-trial motion did not preserve error. Accordingly, we affirm.

## I. Background

Clinton Rentfro divorced Jaylia Rentfro on February 2, 2021. In March of 2021, Jaylia requested—and the Krum Police Department issued—a criminal-trespass warning to Rentfro, instructing him to leave Jaylia's residence and not to return. But after Rentfro repeatedly violated the warning, he was charged with criminal trespass of a habitation.

When the case was called to trial, Rentfro pleaded nolo contendere. The trial court deferred further proceedings without entering an adjudication of guilt and placed Rentfro on community supervision for 18 months. Two of the terms and conditions of Rentfro's community supervision were that he not go within 500 feet of certain addresses, including Jaylia's residence, and that he not contact her (unless that contact was consistent with their divorce decree and child-custody agreement).

2

But again, Rentfro violated the requirement that he not go within 500 feet of Jaylia's residence, so the State moved to proceed with an adjudication of guilt. The State twice amended its motion to include multiple alleged violations of Rentfro's community supervision's terms and conditions.

After numerous delays—caused in large part, if not solely, by Rentfro's prompting his lawyers to withdraw and his looking for another attorney—the trial court held a two-day hearing on the State's motion to adjudicate. No record was made of Rentfro's pleading true or not true to the allegations in the State's motion—or even of whether the trial court asked him to so plead.

Nor does the record indicate whether the trial court advised the parties how it intended to conduct the hearing on the State's motion. Yet the record reflects that the court intended to conduct a unitary proceeding. Right before the State began its case, the prosecutor stated the following: "And then, Judge, just for clarification, I know that we can -- I think for a motion to adjudicate, we are doing guilt and punishment at this time, so some of my witnesses are punishment-related as well as related to the motion itself." The trial court said, "Okay," but Rentfro said nothing and did not object that he would be denied the ability to present certain evidence by the unitary proceeding.

The State presented multiple witnesses and voluminous exhibits to establish that Rentfro (1) had violated his community supervision's terms and conditions and

3

(2) should be confined rather than continue on community supervision. His own fifteen-year-old son testified, "I want to see him go to jail."

Rentfro cross-examined witnesses and elicited testimony both on his defensive points and in support of punishment mitigation (such as testimony suggesting that he had violated his community supervision's terms because he was trying to see his children and had anxiety). Additionally, Rentfro called a psychologist to testify. To accommodate the psychologist's schedule, the trial court allowed Rentfro to call the psychologist out of order during the State's case. She testified about Rentfro's depression, grief, anxiety, obsessiveness, and mental-health issues contributing to his problematic behavior.[1] When both sides had completed questioning the psychologist, the trial court asked, "May she be excused?" Rentfro's counsel responded, "Yes, Judge." The State then proceeded with its case, calling Jaylia to testify.

After Jaylia's testimony, the State rested, and it was Rentfro's turn to call witnesses and offer evidence. Rentfro's counsel stated that he wanted to call Rentfro as a witness, but first the following exchange occurred:

> And let me explain, Judge. I know that this is a sort of [a] together hearing with both punishment and guilt/innocence together. I am instructing -- and I don't want to complicate our day, but I am instructing Mr. Rentfro to take the Fifth on the guilt/innocence type

[1]Before the psychologist began testifying, the prosecutor objected to Rentfro's eliciting any testimony that because of his mental-health conditions, he lacked the capacity to form the mens rea to violate his community supervision's terms. The trial court agreed, and Rentfro's counsel stated, "[T]hat's not the intention of the witness's testimony."

4

questions. I'm concerned I don't want Mr. Rentfro to incriminate himself. And so I wanted to inform the Court that I would be instructing him on that, but I did want him to testify about his overall intent and then just to be able to testify so that we could get appropriate information for the punishment phase. I know that that does not insulate him from questions relating to his guilt or innocence. And so Mr. --

THE COURT: He's not able to take the Fifth. Once you put him on the stand, then he's subjected to all questioning.

Rentfro did not object to the trial court's ruling and—despite having the opportunity—again did not object or complain that he would be deprived of putting on his own testimony, or any other testimony, because of the proceeding's unitary nature.

Instead, Rentfro's counsel immediately responded that he would not be calling Rentfro but had two other witnesses. Rentfro then called the two witnesses: (1) a mutual friend of Rentfro and Jaylia and (2) his sister. After both had testified, the trial court asked Rentfro, "Any other witnesses?" Rentfro's counsel responded, "No more witnesses, Judge."

Each side then gave a closing argument. As part of Rentfro's closing argument, his counsel argued that Rentfro was not a "criminal mastermind" but had some "dumb behavior, moronic behavior" that ultimately should be handled as a family case and not a criminal trespass. Overall, Rentfro's argument primarily focused on his mental-health issues and his request to be continued on community supervision in lieu of incarceration.

At the hearing's conclusion, the trial court adjudicated Rentfro's guilt and decided his punishment. The trial court rejected Rentfro's request for continued community supervision, stating that he "[had] psychologically tortured [his] ex-wife and [his] children" and that although he might have mental-health issues, allowing probation would be "irresponsible." The trial court did not give Rentfro the maximum 180 days' confinement that the State had requested but instead sentenced him to 120 days in jail.

Rentfro moved for a new trial, claiming that the trial court had intruded on his right to testify by holding a unitary proceeding. Rentfro's trial counsel signed an affidavit explaining that Rentfro was denied the opportunity to present punishment evidence through his own testimony that would have shown that he was trying to exercise his rights as a parent and had untreated mental-health issues. He also averred that with a separate punishment hearing, Rentfro's psychologist could have additionally "testified that due to his untreated[-]at-the-time anxiety condition, Mr. Rentfro was likely unable to formulate the criminal intent to violate the terms of his bond"—a position directly at odds with his counsel's in-trial representation that the psychologist was not intending to offer testimony supporting Rentfro's alleged incapacity to form mens rea on the alleged community-supervision violations. Although Rentfro timely presented his request for an evidentiary hearing, his new-trial motion was overruled by operation of law. *See* Tex. R. App. P. 21.8(a), (c).

## II. New-Trial Hearing

On appeal, Rentfro asserts that the trial court erred by not holding an evidentiary hearing on his new-trial motion. We disagree.

### A.    Standard of Review and Applicable Law

The purposes of a new-trial hearing are (1) to determine whether a case should be retried and (2) to complete the record for presenting appellate issues. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (citing *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009)). Such a hearing is not an absolute right. *Id.*

We review a trial court's denial of a hearing on a new-trial motion for an abuse of discretion. *Id.* at 200. A trial court abuses its discretion by denying a hearing if the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* at 199; *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). A hearing is not required unless both elements are satisfied. *Smith*, 286 S.W.3d at 338 (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). Conclusory affidavits are inadequate to require a hearing. *Id.* at 339.

### B.    Analysis

Rentfro's core complaints about the denied new-trial motion concern the trial court's alleged "refus[al] to allow [him] to testify only with respect to punishment," refusal to allow the psychologist's additional testimony, "and [failure to] bifurcate the proceeding between adjudication and punishment." Citing *Hardeman v. State*, Rentfro

7

contends that a defendant "must have the opportunity to present evidence in mitigation of punishment if not afforded during adjudication." 1 S.W.3d 689, 691 (Tex. Crim. App. 1999); *see also Duhart v. State*, 668 S.W.2d 384, 387 (Tex. Crim. App. 1984). But Rentfro did not demonstrate that he was entitled to a hearing on his new-trial motion. To explain why, we first set forth the law governing motions to adjudicate.

"To be placed on deferred adjudication, a defendant pleads guilty." *Middleton v. State*, 634 S.W.3d 46, 50 (Tex. Crim. App. 2021). A trial court does not initially find the defendant's guilt; rather, it finds that the evidence substantiates the defendant's guilt and defers further proceedings without adjudicating guilt. *Id.*[2]

The court of criminal appeals characterizes the statute governing this process as "contemplating a pause" to allow a defendant the "opportunity to complete a probationary period in compliance with conditions, and if [the defendant] succeeds, then the charges will be dismissed." *Id.* But if not, "and the trial judge later finds a

---

[2]For purposes of criminal prosecution, a plea of nolo contendere is functionally equivalent to a guilty plea. Tex. Code Crim. Proc. Ann. art. 27.02(5). When a defendant waives a jury trial and enters a no-contest plea on a noncapital offense, the proper procedure is to conduct a unitary trial. *Moreno v. State*, No. 05-15-00406-CR, 2016 WL 3595419, at *3 (Tex. App.—Dallas June 28, 2016, pet. ref'd) (mem. op., not designated for publication) (first citing *Saldana v. State*, 150 S.W.3d 486, 489 (Tex. App.—Austin 2004, no pet.); then citing *Barfield v. State*, 63 S.W.3d 446, 449 (Tex. Crim. App. 2001)). In such a trial, there is no "bifurcation" (where the guilt–innocence and punishment stages are conducted separately). *Id.* (citing *Saldana*, 150 S.W.3d at 489).

violation of [community supervision] and decides to adjudicate guilt, the proceedings continue where they left off." *Id.*

When the State alleges the violation of a condition of a defendant's deferred-adjudication community supervision, "[t]he defendant is entitled to a hearing limited to the determination by the court of whether the court will proceed with an adjudication of guilt on the original charge." Tex. Code Crim. Proc. Ann. art. 42A.108(b). The code of criminal procedure further provides that "[a]fter an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal, continue as if the adjudication of guilt had not been deferred." *Id.* art. 42A.110(a).

In *Duhart*, the court of criminal appeals stated the following:

Fairness would dictate that a defendant be accorded an opportunity to offer appropriate evidence in mitigation of punishment after the revocation of "probation"[3] and the adjudication of guilt and before the assessment of punishment if such evidence has not already been elicited during the proceedings, particularly if the defendant requests the opportunity.

668 S.W.2d at 387. But the court specifically stated that neither the code of criminal procedure nor due process mandates a separate punishment hearing. *Id.* "[I]mplicit in

---

[3]"Probation and community supervision are often used interchangeably because 'prior to 1993, community supervision was referred to as probation.'" *Kulor v. State*, No. 03-23-00642-CR, 2025 WL 1005616, at *2 n.1 (Tex. App.—Austin Apr. 4, 2025, no pet. h.) (mem. op., not designated for publication) (quoting *Lake v. State*, 532 S.W.3d 408, 409 n.1 (Tex. Crim. App. 2017)).

[the court's] analysis [was] that if the appellant in that case had wanted to present evidence on punishment, he should have asked to do so at the revocation hearing." *Euler v. State*, 218 S.W.3d 88, 92 (Tex. Crim. App. 2007).

"All of this is usually done simultaneously"—in a unitary proceeding. *Tapia v. State*, 462 S.W.3d 29, 31 n.2 (Tex. Crim. App. 2015); *see also Griffith v. State*, 166 S.W.3d 261, 265 (Tex. Crim. App. 2005) ("Functionally, it is all one proceeding."); *Robinson v. State*, 310 S.W.3d 574, 577 (Tex. App.—Fort Worth 2010, no pet.) ("[T]he code of criminal procedure does not require a separate punishment hearing during an adjudication proceeding and . . . functionally, an adjudication proceeding is unitary."). In a unitary proceeding, the trial court's decision "is not fixed until it renders judgment on guilt and punishment after all the evidence and arguments have been heard."[4] *Barfield*, 63 S.W.3d at 451.

To preserve a complaint about this process for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an

---

[4]Courts have explained that even if a trial court "employs procedures characteristic of bifurcation, the procedure remains a unitary trial 'punctuated by a recess in the middle.'" *Daniels v. State*, No. 07-18-00357-CR, 2020 WL 1500055, at *2 (Tex. App.—Amarillo Mar. 27, 2020, no pet.) (mem. op., not designated for publication) (quoting *Saldana*, 150 S.W.3d at 489).

express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Such an objection must be made at the time the trial court denies the defendant an opportunity to present punishment evidence or, if the defendant has no opportunity to object at that time, through a motion for new trial. *See Vidaurri v. State*, 49 S.W.3d 880, 885 (Tex. Crim. App. 2001); *Roth v. State*, No. 2-02-516-CR, 2004 WL 1472622, at *2–3 (Tex. App.—Fort Worth July 1, 2004, no pet.) (mem. op., not designated for publication). Defendants may raise the issue through a new-trial motion only in the limited circumstance where they are denied the opportunity to object during the proceeding. *See Euler*, 218 S.W.3d at 92 (discussing *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992)).

To illustrate, in *Issa*, after the State moved to adjudicate the defendant's guilt, the trial court held a hearing on the State's evidence. 826 S.W.2d at 159–60. At the close of the hearing, in one swift proclamation, the trial court revoked the defendant's probation, adjudicated guilt, and assessed punishment before immediately leaving the bench. *Id.* at 160. In a new-trial motion, Issa complained that he was improperly denied the opportunity to present evidence before his sentencing. *Id.* at 161.

Agreeing with Issa, the court of criminal appeals held that "when a trial court . . . adjudicates a previously deferred finding of guilt, the court must then conduct a second phase to determine punishment." *Id.* The court further stated that a

"defendant is *entitled* to a punishment hearing after the adjudication of guilt, and the trial judge must allow the accused the opportunity to present evidence." *Id.*

But in later decisions, the court backed away from this emphatic statement. *See Euler*, 218 S.W.3d at 92; *Hardeman*, 1 S.W.3d at 690–91. As explained in *Hardeman*, "*Issa* did not stand for a general right to a separate punishment hearing, much less one on a different day." *Euler*, 218 S.W.3d at 92 (discussing *Hardeman*); *see also Pearson v. State*, 994 S.W.2d 176, 177–78 (Tex. Crim. App. 1999) (discussing both *Duhart* and *Issa*). "[A]ll that is required" is for a defendant to have "the opportunity to present evidence *during* the proceedings." *Pearson*, 994 S.W.2d at 179.

*Issa* presented the rare situation where the defendant was both "improperly sentenced without being given an opportunity to present evidence prior to sentencing" and simultaneously denied an "opportunity to object until after the trial court's action was taken." *Id.* And only in this rare situation is a defendant permitted to use a new-trial motion to raise the issue of not being able to present punishment evidence. *Id.*; *see, e.g., Mabe v. State*, Nos. 10-21-00282-CR, 10-21-00283-CR, 2022 WL 2977476, at *1–2 (Tex. App.—Waco July 27, 2022, pet. ref'd) (mem. op., not designated for publication) (holding new-trial motion did not preserver error because "unlike *Issa*, the record reflect[ed] that [the appellant] had an opportunity to raise this complaint in the trial court prior to sentencing but chose not to do so"); *Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd) ("The use of a

motion for new trial to preserve error is apparently limited to the rare circumstances of *Issa*—when there is no opportunity to object to the lack of a hearing.").

We do not face such a rare situation here. As we stated above, there is no record of Rentfro's pleading true or not true to the allegations in the State's motion to adjudicate or a discussion about how the trial court intended to conduct the proceeding. But the record shows that the parties understood that it would be a unitary proceeding: during the trial court's consideration of various pretrial matters, the prosecutor specifically advised the court that "we are doing guilt and punishment at this time, so some of my witnesses are punishment-related as well as related to the motion itself." Rentfro did not object to this process and voiced no concern at that time about his ability to present evidence.

Over the two-day proceeding, both sides were given the opportunity to present evidence. On the second day, during the State's case, the trial court allowed Rentfro to call his psychologist out of order to accommodate her schedule. Before the psychologist testified, the State objected to the scope of the psychologist's testimony, and Rentfro's counsel confirmed that Rentfro's alleged diminished capacity was "not the intention of the witness's testimony"—the topic he later claimed in his new-trial affidavit that he was deprived of raising.

Through the psychologist, Rentfro elicited testimony about his mental-health conditions so that he could advocate for staying on community supervision. At the conclusion of the psychologist's testimony, Rentfro allowed her to be excused and did

13

not request to ask additional questions of her or object that he could not do so because of the trial court's manner of conducting the hearing.

In addition, when Rentfro's counsel indicated that he wanted to call Rentfro to the stand to selectively testify only on punishment, counsel acknowledged that the trial court was holding a unitary hearing. When the trial court indicated that it would not allow Rentfro to selectively invoke his Fifth Amendment right against self-incrimination, Rentfro's counsel did not object. Instead, he said he was ready to offer two other witnesses, who both testified. Then, at the conclusion of the hearing, the court asked Rentfro if he had any other witnesses. Instead of objecting or claiming he wanted to put on additional evidence, his counsel said, "No more witnesses, Judge." *See, e.g., Lazo v. State*, No. 13-13-00303-CR, 2014 WL 5499910, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 30, 2014, no pet.) (mem. op., not designated for publication) (holding that appellant was provided the requisite opportunity to present evidence when the trial court specifically asked if both attorneys were resting regarding punishment and each attorney rested).

Unlike Issa, Rentfro had multiple opportunities to object during the proceedings about the hearing's unitary nature and to complain that he was not given an opportunity to present certain evidence. He could have raised the issue (1) before the proceeding started (when the prosecutor discussed the proceeding's unitary nature), (2) during or after his psychologist's testimony (if he thought he had additional testimony to elicit from her), (3) when he attempted to take the stand to

14

offer selective testimony (and his counsel acknowledged it was a "together hearing"), or (4) when the trial court asked if he had any other witnesses, and he rested. But he did not object or otherwise raise the issue in these four moments or at any other time before filing his new-trial motion.

Based on the record showing that Rentfro was not denied the opportunity to raise his complaints before sentencing—and did not raise them—we hold that Rentfro failed to preserve the complaints he raised in his new-trial motion about being denied the opportunity to testify only on punishment issues and to further question his psychologist (on topics some of which his counsel had already agreed were improper). *See* Tex. R. App. P. 33.1(a)(1); *Montelongo*, 623 S.W.3d at 822; *Pearson*, 994 S.W.2d at 179; *Mabe*, 2022 WL 2977476, at *1–2; *Lopez*, 96 S.W.3d at 414. We therefore hold that the trial court did not abuse its discretion by not holding a hearing on Rentfro's new-trial motion. We overrule Rentfro's sole issue.

### III. Conclusion

Having overruled Rentfro's sole issue, we affirm the trial court's "Order Adjudicating Community Supervision and Imposition of Sentence."

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 1, 2025